Mr. Gershwin-Gordon. Good morning, Your Honors, and may it please the Court. I have two points that I'd like to get out at the start, a legal point and a factual point. First, the legal point. The law is clear that a mortgagee does not become a mortgagee in possession unless the mortgagee is to manage and operate the property to pay down the outstanding debt. Merely taking steps to secure the property and to protect it from vandals and decay is not enough. That distinction is reflected in cases like Zisman and Woodlands, which distinguish between actions of a mortgagee merely to safeguard property, on the one hand, and actions to collect rents and profits, on the other. That same distinction is reflected in the mortgage contract here, and that exact same distinction is reflected in the text of the insurance contract itself, which treats a mortgagee who has mere care, control, and custody different from a mortgagee in possession. Does it matter who has the keys? Your Honor, who has the keys is not dispositive, and let me explain why. First of all, the cases are legion that merely having keys but not collecting rents does not turn one into a mortgagee in possession. That's what the Woodlands case holds. Woodlands is a case in which the mortgagee changed the locks and winterized the property. What the court held there was the mortgagee was not a mortgagee in possession because the mortgagee was not operating the property to collect the rents. Here, of course, there's a dispute about who had access to the keys, but that dispute, and certainly on summary judgment, the district court could not have ruled on that dispute against us. You mentioned the Woodlands case, but that's from New Jersey. We need cases from Pennsylvania. Is there some equivalent to Woodlands in Pennsylvania? I think Zisman is the best case from Pennsylvania, Your Honor. Let me make one point on Woodlands if I could before I pivot to Zisman, which is that New Jersey law is not any different than Pennsylvania law, which is not any different from Illinois law. Yes, I understand that's your position, but if we're trying to figure out Pennsylvania law... I would point the court then to Zisman, and what Zisman says is that a mortgagee in possession requires actual possession by the mortgagee as a mortgagee for the purpose of enforcing his security on the property or making his income to help pay his debt. That's the question, whether Zisman says that. It certainly holds that if a mortgagee does those things, it's a mortgagee in possession. You say that we should treat it as holding that only if a mortgagee does those things is it a mortgagee in possession. I'm not sure I see that in Zisman. That's a fair point, Your Honor, and I guess I think that Zisman is perfectly consistent with our position, but does it require this distinction? So the difference between if and only if. So I guess I do think, so I'd like to make a few points there, Your Honor. First, I think it's best read to say if and only if. It's setting out the test, and I read it, and it goes on to say that even rents and profits don't make him a mortgagee in possession unless he takes the rent in such a way as to take it out of the hands of the mortgagor and the management and control of the estate. But I take Your Honor's position that one could say that it wasn't squarely presented there. It's not a position, it's just a question. We're trying to figure out what Pennsylvania law is. My view is the answer is yes. I know nothing about Pennsylvania law. You've got a complete naive on your hands. And so I point the court to Zisman, which I think is the authoritative statement. But if there were any doubt, I have a couple of points, Your Honor. First, I think Woodlands and other cases do answer that. I don't think there's anything distinctive about Pennsylvania law. Second, it seems to me critically important that what this court is doing is interpreting an insurance contract. And so not only is the background common law important, but the other, the text of the insurance contract and the text of the mortgage agreement are relevant. So it seems to me, first, A, the same distinction that we're drawing between entering as a mortgagee in possession and just securing the property from destruction and decay is reflected in the mortgage agreement. Section 23.4 governs operation and management to be a mortgagee in possession. Section 24 is entry to preserve the security. The exact same distinction, I would suggest, is reflected in the insurance contract. And I point the court to four things. First, the distinction in the contract between the care control and custody provision, which is the assertion of control, and the foreclosure exception, which is a mortgagee in possession. Those are two different exclusions in the contract. Second, the proposition that terms in a sequence are interpreted alike. Remember, in the foreclosure exclusion, it is foreclosure, deed in lieu of foreclosure, repossession, and mortgagee in possession. Merely taking a property to secure from vandals and decay is not the same in any relevant sense as foreclosure, deed in lieu of foreclosure, or repossession. Does it matter who holds the deed to the property? So, Your Honor, I think that would be a relevant factor, and here I think it's critical that Apex returned the deed to the dyes and said to the dyes, we are not accepting the deed in lieu of foreclosure, and then went on to say that it is your responsibility to keep the property safe and secure. So to the extent the deed is relevant, and we think it is one aspect of the case that's important, Apex returned the deed to the dyes. We think that's important. What we found here was that Apex was not trying to own the property, was not seizing control as a mortgagee in possession, and in fact was just securing its collateral. The other two points on the contrary... How were the dyes to keep it in repair if Apex held the keys? So, Your Honor, we think that... Let me tell you why I'm asking this question. I know your brief says that there was a posted notice saying, dear owners, if you want the keys, just call on this agent. What in the record supports that contention? So the deposition testimony of the president of Apex said that that was the instruction that was given to the agent. Yes, but what in the record supports the conclusion that the agent did that? So what the testimony was, was that that was the usual practice of an agent, and they assumed... I know. There is testimony that A told B to do X. Do we have evidence that B did X? No, but can I... The agent never testified, never gave a deposition. No, but can I add a... Is that a big problem? No, can I add a bridge, but then explain why it's not a problem in the big picture? It's not a problem with that specific point, because what he also said was that was the usual practice, and then I think that is the bridge, at least for a finder of fact, between I told them to do it and it happened, is that was the usual practice. But even if Your Honor were to disagree with that... Which was the usual practice? Telling B to do something or B doing it? No, that a professional would follow through on the instruction she was given. But even if Your Honor didn't think that was enough, to establish the point that the dyes were not in control, we point not only to the key, but remember what happened after Apex secured the property here and then returned the deed to the dyed and said it's your responsibility to keep it safe and secure. Over the course of the next 20 months, Apex had, until the fire, Apex had no contact with the property. What happened in that time? It was the dyes who were subject to a court order to keep the property in repair. It was the dyes who met with the city building inspector at the property to discuss the building code violations. And it was the dyes who hired a handyman to further board up the property and anchor it. And ultimately, Your Honor, it was Chuck Dye who went to jail for failure to maintain the property without apparently ever saying, I couldn't do it because Apex was in control. At the very least, Your Honor, that creates, remember, all inferences are taken in our favor because summary judgment was granted against us. At the very least, that would create an issue of, a genuine issue of material fact as to whether the dyes were excluded. Of course, we don't think that the court, that that's the only, and so we think that, again, the key and the dyes access and the failure to say we couldn't get in is all sufficient. I also would point out, Your Honor, that there's no evidence that the dyes asked to get into the property from Apex. Remember, this was an abandoned property. The reason we're here is because when Apex got there, it was open to the elements. It was open to vagrants and vandals, and it was trash and garbage everywhere. So this was not a situation where the dyes were saying, hey, let me in, and Apex is saying, oh, no, you can't come in. Apex secured the property, which is what you would want them to do. That circles back, I think, to my main point here, though, is that even when you change the keys, even if there were no evidence, cases like Woodlands and 839 Cliffside stand for the proposition that it is a major leap to go from a mortgagee merely securing property to a mortgagee who is a mortgagee in possession, and there are good policy reasons for that, right, that you want to incentivize, particularly in abandoned properties, you want to incentivize the mortgagee to secure the property. But a mortgagee in possession comes with a series of duties, trust duties, in Woodlands, condo fees duties, a whole series of obligations that a mortgagee should not be forced to take on simply to preserve the property from destruction and decay. Excuse me, I'm sort of focused on the deed issue. There's no deed in lieu of foreclosure here, right? No. What happened, just to be clear, Your Honor, what happened was the dyes tendered a deed to Apex. Apex took it conditionally, said we need to look at the property. They examined the property, saw the state it was in, and then on April 27th of 2009, and this is in the record at, excuse me, Your Honor, it is in the record at JA20. They returned the deed in a letter to the dyes, and what they said is we are not taking your, we're not taking the deed, and then I strongly suggest you immediately inspect said property to make sure it is safe and secure so you may protect any interest you have. And again, that's April 27th, 2009 at JA20. Well, I get the impression that they gave up on the property because they didn't think it was worth anything. So I think that may be, Your Honor, there's, I mean, I think that will often be the case in abandoned property, but the question is what do you want, what does the law do to a mortgagee who's in the situation where there's a default on the loan? And what the law doesn't say is you have two options, do nothing and let the property deteriorate or become a mortgagee in possession. What the mortgage agreement does and what the common law does and what the insurance contract all do together is to say no, there's an intermediate step. What you can do is go in and preserve the property to lock out vandals, to protect it from the elements. And of course, you know, that makes good sense. That's what we would want the law to be. Of course, if there's any doubt about this, right, this is an exclusion from insurance coverage and exclusions are construed narrowly against the insurer in favor of coverage as long as there is a reasonable interpretation that can be made. We think we amply satisfy that in this case. With the court's permission, I've reserved the remainder of my time for rebuttal. Certainly, counsel. Thank you, sir. Mr. Hacker. Good morning, Your Honors, and may it please the court. With respect, Mr. Gorshengorn's focus on the facts that he says are in dispute is misplaced because coverage here is determined conclusively by Apex's settlement of the Illinois action where the central question, the only question to be decided was whether or not Apex exercised immediate control over it. Exactly, counsel. And settlement is not a decision. The principal argument in your brief that the settlement should be treated as res judicata is not a correct statement of law. So I think you need to address the merits. Well, I can address the merits, but I want to focus on the settlement because it's what is true. You can control your oral argument, but I am giving you advice. I understand, but Donnelly, which applies Pennsylvania law, the cases that we cite at our brief on page 19 do establish the central insurance proposition. What insurance coverage are judgments and settlements. And if you have a claim that says, you know, you are a mortgagee in possession, you exercise dominion control, and that's why you're liable under Illinois law, and then you settle that, it has to be true. The only basis for liability, literally the only reason, there's only one reason in this case that Apex was liable under- You're just ignoring what a settlement is. The plaintiff contends that Apex is liable for a certain reason. Apex believes that it has a defense. They meet in the middle. That does not concede that the plaintiff's claim was legally correct. At any event, Pennsylvania law is irrelevant to that question. The law that matters is the law of the court in which the first suit was filed. That is the law of Illinois. That's 828 U.S.C. 1738. Just believe me, you are better off addressing other issues. Well, so the question then, what the principal argument that Apex is submitting, I think, here, is that there is a different standard, citing Pennsylvania law, to be clear, for the first time, that there is a different standard for mortgagee in possession status that differs from the tort liability status. And that is incorrect. It's the same standard under both Illinois and Pennsylvania law that determines whether or not a mortgagee becomes a mortgagee in possession for purposes of tort liability. In the reply brief at the back end, Apex argues for the first time in this entire litigation that Pennsylvania law creates this different standard. Now, Apex thinks Illinois and Pennsylvania law are the same. We agree. They're the same. And under the common standards for both, there's only one circumstance under which a party can be, a mortgagee can be exposed to tort liability, and that is if the mortgagee exercises dominion and control. There is no separate standard for the two because under this policy, this is an exclusion for tort liability. That's the only thing this is about is whether or not the mortgagee has been exposed, has incurred tort liability. And so the question is, why did the mortgagee incur tort liability? You have to determine, and this is maybe where I have a difference with you, Judge Easterbrook, you have to determine in the second case, what's the nature of the liability? Why were they held liable? That's the key point. They weren't held liable. They settled the case. You can spend your whole argument on this if you want, but you will effectively leave your opponent's arguments unanswered. I understand. Do you understand that? I do understand. I don't mean to be relying solely on this point. I'm just making the point that the question here is what was the basis for the payment? Why were they legally obligated to make a payment under the settlement? And what all the cases say is you have to investigate and determine what happened. For example, for example. Look, you have two dead firefighters. Absolutely. And that's what brings this to the peak. And so, as Judge Easterbrook points out, that gives some incentive to settle while other things are pending. So the settlement is to take care of these families where you've got two dead firefighters. A hundred percent. We're not objecting. We're not saying they shouldn't have settled. We're not denying that they compromised their liability. But let me give an example. If the question had been whether they were negligent, just straight up negligence, not a premises liability issue, and there was a summary judgment, a hybrid summary judgment ruling, saying the jury can decide whether or not what you did was negligent, and the next day they settled the case. You wouldn't go over to Pennsylvania law and then re-litigate the question whether or not the facts that were at issue in the underlying case established negligence for purposes of negligence coverage under a policy that covered a negligence claim. Right? You would never scour Pennsylvania law to re-litigate that question. That's the only point here is we're not supposed to be re-litigating under Pennsylvania law whether or not they qualified as mortgaging in possession because their obligation to make a payment pursuant to the settlement was based on a claim that said No, the obligation to make a payment pursuant to the settlement is based on the settlement. And if you don't grasp that, you're just missing the central point. I want to repeat myself. All my point is it's based on the settlement absolutely, but the settlement is a resolution, a compromise of a claim, and that claim was that you exercised dominion and control. There wasn't another claim. There wasn't a different version of the theory for why the plaintiffs were trying to hold them liable. They compromised the value of that claim, to be sure, but the only basis on which they ever became liable was because they settled a claim that said you exercised dominion and control. It's the only reason we're here. Well, you're, in fact, saying there's an admission, and that's it. Well, it's not so much an admission as it is an acquiescence to a theory of liability, and in a coverage case, the policy takes the settlement, the judgment liability, as it comes to the policy. So as I say, if you settle a negligence claim, you say I don't think I was negligent, you think I was, you know, I'll agree to pay you $15 million because I don't want to fight the question of negligence, right? Then in the coverage action, the follow-on coverage action, you do not relitigate the question whether or not they were negligent. That would make no sense. I think there's no precedent for that. Do you have some Illinois case holding that? I have Pennsylvania cases because the policy is different. Do you have some Illinois case holding that? I do not have an Illinois case, Your Honor, saying that you don't relitigate the coverage question because I submit that's a question governed by Pennsylvania law. No, it is not. You're obviously not familiar with Section 1738 of the Federal Code. It hasn't been cited by anybody here. That's not an argument that Apex has raised. It says the argument that you don't relitigate a settlement in the coverage action, they did not respond to that basic point, which I think is foundational coverage law, citing 1738. So it's true that I'm not arguing about 1738, but I am saying under Pennsylvania law, you don't because it wouldn't make sense to relitigate the underlying question about whether or not your actions constitute a negligence, whether or not they were expected or intended, whether or not in this circumstance, you exercised your authority because you had dominion and control. That was the only question at issue, and that was resolved. Now, to be clear, what they're arguing now, as I already alluded to, was that there is a difference, that the trial court essentially was wrong, the underlying action, the district court here was wrong, because there's a difference between tort liability and mortgagee in possession status. My first point, Your Honor, which is absolutely, I think, a response to what they're arguing now, is that tort liability, the tort standards are what matters. That's the key. That's Zisman, Marcon, a tort case, says you can only be liable if you exercise dominion and control. There's not a separate standard for purpose, because why would there be? From the perspective of tort liability, the law, the injured plaintiff, doesn't care about why it is the mortgagee entered the property and did the things the mortgagee did to exercise control. All that matters is the party that exercised dominion and control and could have protected the third party from injury didn't do so. So the reason you enter shouldn't be relevant from the perspective of tort liability, and I think that's what Zisman is saying squarely. That's the whole point is, when you're looking at tort liability, what matters is your actual possession, not your constructive possession that you may have through your theoretical rights in a mortgage contract. But if purpose matters, Your Honors, if purpose matters, of course it's satisfied here. There's only one reason Apex entered the property, and that was to protect and secure the property, the collateral. Here's what Apex itself said at JA 296. Apex says it, quote, entered to protect and preserve our collateral. What does the law say? Pennsylvania law, Myers-McComber says the basic thing a mortgagee in possession does is enter the property to, quote, the reason that Apex itself says it entered the property. The Zisman quote that Mr. Gershengorn offers says a mortgagee in possession enters the property to enforce its security interest. That's what happened here. They were enforcing their interest because they, at that point, had conditionally agreed to accept a deed in lieu of possession, so they were enforcing that security interest at that stage, and, of course, when a property is derelict like it is here, you don't have to manage and operate and start up a new business and generate rents and all that. You just try to protect the property. That's an absolutely foundational principle of what it is a mortgagee in possession does to protect and secure and control its security interest, so there is no difference. On the facts, I think Your Honors have already identified the problem with Apex's position, which is, again, I submit this is not the place to relitigate the underlying facts. I think we accept the settlement as it comes to us, an acquiescence to the theory of liability, which is that they exercise dominion and control because there was no other theory asserted, and the district court below correctly identified the problem here. It is true that if you look at all of the sticks in the bundle here of control, dominion and control, separately and individually like the others don't exist, any one of them might not be sufficient, so just excluding the owners through locks and nothing else might not be sufficient. Just entering the property to repair it might not be sufficient. The court correctly identified all of those things as together on these facts. Now I'm worried. If this is a problem of characterization in which no fact is sufficient and everything is relevant, why isn't that a question for the trier of fact? You make it sound like the reasonable person's standard in negligence. That's classically a jury question, not summary judgment material. Well, there are, even in negligence, you can have summary judgment if the facts, when put together, wouldn't allow a reasonable jury to reach that conclusion. I think that's what the district court is saying here. There are precedents. There are principles that identify the number of, if you will, sticks in the bundle that you need to establish dominion and control, and on the undisputed facts here, what you have is entry on the property to repair it, putting a tarp over the roof, boarding up the windows. They sought insurance to pay for additional repairs, ultimately didn't get it, but that's what they were doing, was forced place insurance to get it, and changing the locks to exclude the owners. They say it was to exclude vagrants, but that doesn't make any sense. The vagrants didn't have keys. The only, literally, the only people on the planet Earth that were being excluded when they changed the locks was the dice. Are you saying then a mortgage in lieu of a mortgage, is that the same as ownership? It's not the same as ownership. To the exact contrary, it is clear the cases will say repeatedly, a mortgagee in possession is not the true owner. The true owner remains the true owner. A mortgagee in possession, unlike the other three ways in which liability is excluded under the policy, you don't become the owner because you don't accept a deed, you don't foreclose on the property. What you do is assert dominion and control over it for a temporary period of time. It's not permanent. And to be clear, Apex argues in their brief three different times that this policy requires permanent ownership. They call it non-temporary complete control. That doesn't make any sense because as they acknowledge and as the law is clear, a mortgagee in possession is by definition temporary. You're only a mortgagee in possession, A, for as long as you want to be. You can stop being a mortgagee in possession by your own acts, which were not adequately executed here. They gave the deed back. It's not clear at all. In fact, the record shows the dyes never received it. They never received that letter. They say they sent it. They say they sent it certified mail. There's no certified mail receipts. They got the deed, right? The dyes did not get the deed. Where is it? Nobody knows. The letter saying that you are now the owners and you should take care to, we suggest that you take repairs, the dyes never received that letter. There was sent certified mail and there's no receipts for those. They can't sell that property. I'm sorry? They can't sell whatever that deed moved. I assume from the dyes' perspective there would be some sort of cloud on the title. I agree with that. It sounds like you're just identifying another dispute of fact about where the deed is. I want to come back to the question, which I asked Mr. Gershengorn, about what the record shows about whether the dyes had access. APEC says that the record shows, at least through the pattern of practice inference, that they were told that they could contact the agent. Is there any contrary evidence in the record? Well, the contrary evidence is the dyes' undisputed consistent testimony that they were never told that, that they never saw it. When they visited the property, there was no post. That's a different question from whether something was posted to whether they admit they saw the thing that was posted. That's consistent with not looking. So we've effectively got another disputed issue of fact. A multi-factor balancing test and now at least two disputed issues of fact. It's getting harder. Well, I disagree that there are material disputes of fact here. They say they posted and rest only on what they think is the normal practice, but this is where they already conditionally accepted a deed in lieu of foreclosure. The normal practice in that circumstance would not be to allow the owners access. On the undisputed facts, what APEX has decided was we are going to get to decide who can enter the property. It's not undisputed that they accepted a deed in lieu of foreclosure. In any event, your… It was conditional acceptance. Thank you. Thank you, Your Honors. Anything further, Mr. Gershengorn? I'll be brief, Your Honor. I'd like to just mirror where I started with a legal argument and then a factual argument. Actually, this time I'll start with a factual argument. I think at the very least, there are the facts Your Honors has identified. First, Judge Mannion, I pointed you to the place in the record. We sent the letter. The letter is in the record. They claim they never received it. That's a classic fact question. Second, with the keys, Your Honor is aware of the testimony on Joint Appendix 247 to 248, which is where the testimony of Theodore Kaepnick is about the keys. They say that they didn't see the note. That's a fact question. The question about whether we changed the locks, I think it's a little more ambiguous. I would actually use the word. I have used the word change, which I apologize for. I would actually say installed the locks. The testimony is the property was open to vagrants and vandals. What they did was secure it. In any event, in addition to those facts and the ones I mentioned earlier, that the Dyes met on the property with the building inspector, that the Dyes were subject to court order, that the Dyes hired a handyman to board up the property, and that Chuck Dye went to jail. We think there is at very least a fact question on that. But I also would suggest, Your Honor, and now pivot to the legal side, I don't think actually that you need to actually send it back because I think as a matter of law we prevail. Mr. Hacker's principal point, which he reiterated, is that there is no difference between entering the property to protect and preserve the collateral and to operate and manage the property to collect rents. I didn't hear him say that we were operating the property to manage and collect rents. So the question is, are those two things actually identical? And I think the law is clear that they are not. Myers-McCumber, the case that he cited, that's a situation in which a construction company was completing the construction. That is not a simple preserve the collateral case. Marcon, Marcon is distinguishing between actual construction, actual possession, and constructive possession. It is not rejecting the difference between securing collateral and operating and managing the property. So I just think that, as I said at the start, that the case law, the mortgage agreement, which you didn't hear anything about, Section 23.4 v. 24, and the contract, he didn't discuss the care, custody, and control provision versus the foreclosure exclusion. When you look at all of these things in the backdrop of the policy and against the insurance background principles, I think that where exclusions are construed narrowly against the insurer, we prevail as a matter of law. And then one final point, although I agree with everything that Judge Easterbrook said, I do think that Zisman squarely rejects the proposition on which Mr. Hacker hangs his hat, which is that the standard for tort liability and for mortgagee and possession are the same. I think Zisman squarely rejects that. What Zisman says is that rents and profits are part of the definition for mortgagee and possession, but that rents and profits are beside the point for negligence, its dominion, and control. Thank you. Thank you, Mr. Gershengorn. The case is taken under advisement.